**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------x
CHAMPION FOODS, INC.                      :
                    Plaintiff,            :
                                          :
        - against -                       :       Civil Action No.:
                                          :
EATON & VAN WINKLE, LLP and               :
ROBERT D. KATZ,                           :
                    Defendants.           :
-------------------------------------------------X
```

## **COMPLAINT**

Plaintiff Champion Foods, Inc. ("Plaintiff" or "Champion")  by  its undersigned counsel, as and for its Complaint against defendants Eaton & Van Winkle, LLP ("EVW") and Robert D. Katz (EVW and Mr. Katz are collectively referred to as "Defendants")  alleges  on  knowledge  as to  themselves  and  otherwise  on information and belief as follows:

### **Preliminary Statement**

1.      Champion comes before this Court seeking relief based upon the Defendants breach of their fiduciary and contractual duties to Champion.  Set succinctly, in November of 2018, Defendants acted as an escrow agent for Champion, receiving $210,000 from Champion in two different wires. Pursuant to the terms of the escrow agreement drafted by Defendants, the funds were to be released only upon the occurrence of a specific event. Such event never came to fruition.  The funds should have been returned or alternatively not moved from the escrow account.

2.      The escrow agreement was never amended.

3.     Defendants had no authority pursuant to the escrow agreement to unilaterally amend the terms of the same.  At no time was there a request for such amendment, axiomatically there was thus never an agreement to amend the terms of the escrow agreement.

4.     Notwithstanding the same, Defendant, in breach of their contractual and fiduciary duties to Champion, released the escrow funds without receiving the necessary conditions precedent as set forth in the very document they drafted.  Defendants had no authority to effectuate such transaction.

5.     The escrow funds were to be utilized for the purchasing sugar, and the sugar was then to be resold at a profit.

6.     Defendants' actions have caused significant direct and consequential damages.

**Parties**

7.     Champion is a corporation duly organized under the laws of the state of Louisiana, having is principal place of business and headquarters located at 1516 Lakeshore Drive, New Orleans, Louisiana and a second office located at 9516 Waterford Road, Jacksonville, Florida.

8.     Defendant EVW is a New York limited liability partnership with a sole office located at 3 Park Avenue, 16th Floor, New York, New York.  As of the filing of the instant proceeding, EVW was deemed on the New York Department of State, Division of Corporations to be an active entity.

9.     EVW has only one office, in New York, and upon information and belief no partner is of EVW is a citizen of the states of Florida or Louisiana.

10.     Defendant Katz is a resident of the State of New York, with an address at 47 E. 88th Street, Apartment 12D, New York, New York.

**Jurisdiction and Venue**

11.     Jurisdiction arises under 28 U.S.C. § 1332 as the amount in controversy is over $75,000 and there is complete diversity between the Plaintiff and Defendants.  Upon information and belief no partner of EVW is a resident of the states of Florida or Louisiana.

12.     Venue is proper in this District pursuant to 27 U.S.C. §1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred in this District.

**Facts Common To All Causes of Action**

13.     Champion is a family owned and operated leading food distribution company that has successfully been in business for over 25 years. Located in New Orleans, Champion services a range of national and international customers, which include industrial manufacturers, retail grocery, off-shore caterers, ship chandler and food service distributors.

14.     Champion specializes in distributing sugar and is rapidly expanding throughout the United States.  Champion uses a vertically integrated system, sourcing sugar straight from sugar refineries to its distribution centers, and direct to its customers.

15.     Champion is able to supply sugar in various forms such as extra fine sugar, granulated sugar, confectionery sugar and brown sugar to retail, foodservice and bakery distributors. It ships nationally and internationally.

16.     At all relevant times defendant EVW was and is a law firm that advises and represents clients in corporate and financial transactions, commercial and international litigation, dispute resolution, maritime, securities, labor and employment, intellectual property, bankruptcy and restructuring and taxation. The law firm served businesses and clients around the world.

17.     At all relevant times defendant Katz was a partner of EVW

18.     At all relevant times defendant EVW provided actual authority to defendant Katz to act on the law firm's behalf and was provided discretion from EVW to work with its clients and various third parties in the capacity as a partner of EVW.

19.     At all relevant times defendant EVW and Katz demonstrated by their actions to Champion defendant Katz had apparent authority to act on the law firm's behalf and was provided discretion from EVW to work with its clients and various third parties in the capacity as a partner of EVW.

**The Underlying Transactions And Agreements**

**1.  The Escrow Agreement**

20.     In the fall of 2016, negotiations took place between Plaintiff on the one hand, Danex International, LLC ("Danex") and A&J Global Corporation ("AJ") for the purchase of sugar that would be secured and thereafter shipped at the rate of 25,000 metric tons per month.

21.     At all times AJ was represented by Defendants.

22.     While Champion had retained counsel for portions of the transaction, for the most part the negotiations were headed by Champions chief executive officer and president Donna Buring.

23.     The first step in the process was a cooperation agreement between Champion and AJ.  Both entities were in the business of sourcing and selling sugar.

24.     AJ informed Champion it had a contract with a customer but required a supplier, or third party, to broker a deal for the sale of the sugar.

25.     At the time, as represented by Defendants and AJ, AJ had in place end buyers to purchase the sugar.

26.     At the time Champion also had end buyers, as well as suppliers of sugar.   An agreement was made that Champion would introduce to AJ's end buyers a supplier for the purpose of consummating a transaction of sugar.

27.     It was agreed by and between AJ and Champion the two would working together with the sugar transaction and would share in the net profits.

28.     It was agreed that as AJ had the buyers for the Brazilian contact AJ would manage the relationship. Champion would be responsible to procure the sugar and provide the $200,000 for a standby letter of credit.

29.     The standby letter of credit was the agreed upon instrument utilized as a security to procure the sugar.

30.     AJ premised this arrangement on the grounds it had in place an executed agreement with third party involving the purchase by the third party of 300,000 metric tons of sugar.

31.     To effectuate this transaction, AJ and its counsel, Defendants, required Champion demonstrate its intent to be involved in the transactions by providing the escrowed funds.

32.     To that end on or before November 22, 2016, Defendants, through defendant Katz, drafted an escrow agreement ("Escrow Agreement") annexed hereto as Exhibit 1.

33.     The Escrow Agreement set forth the mechanism for: (i) Champion to provide Defendants with $200,000 in an escrow account that will serve as the guarantee for the sale and delivery of 25,000 metric tons of sugar per month, total contract of 300,000 MT annually (ii) Champion was to provide the funds to secure a standby letter of credit ("SBLC") in the amount of $8,375,000 which then was to be verified by AJ; (iii) the $200,000 shall only be released by Defendants upon Champion's receipt, and verification by AJ of the same, of the SWIFT of the

SBLC to Danex International LLC at Bank of America. The funds were to secure the contract for the entire year.

34.     Through the course of the negotiations and the drafting, all led by defendant Katz in his capacity as a partner of EVW and on behalf of his client, AJ, defendant Katz was communicating through and by his EVW telephone and email address.

35.     At all times defendant Katz was working as a partner of EVW, demonstrating both actual and apparent authority of the firm to have defendant Katz make such demonstratable actions.

36.     Defendants drafted and finalized the agreement on Defendants' computers, and thereafter forwarded the draft to the parties for execution.  Defendants, through the signature of defendant Katz, executed the Escrow Agreement.

37.     Wiring instructions were thereafter provided by Defendants to the escrow account provided by Defendants to Plaintiff.

38.     On November 23, 2016, Champion wired $200,000 to the account, in accordance with Defendants' Escrow Agreement, for the benefit of Robert D. Katz Atty Escrow account at TD Bank, NA.

39.     Through and on his EVW emails, defendant Katz provided to Champion the wiring instructions for the escrow account.

40.     Champion had no reason to believe the account was anything other than for the benefit of a transaction involving a partner of EVW, Robert Katz, Esq.

41.     Once the funds were received in the account defendant Katz continued to work through his EVW email address demonstrating that all of his actions were as a partner of the firm.

42.     Defendants relied upon their statements and reputation to induce Plaintiff to provide Defendants with the $200,000 in the escrow.

43.     At all relevant times, information relating to the wire and the agreements identified herein were sent and received on EVW's email addresses.

**2.  The Cooperation Agreement**

44.     The second agreement signed by Champion for this transaction was a cooperation agreement ("Cooperation Agreement") between itself and AJ.

45.     A true copy of the January 13, 2017, Cooperation Agreement is attached hereto as Exhibit 2.

46.     The Cooperation Agreement mirrored in large part the terms of the transaction and working relationship between Champion and AJ that was set forth in the Escrow Agreement.

**The Condition Precedent For The Release Of The Escrow Funds Never Took Place**

47.     At no time did the condition precedent for the release of the escrow funds ever take place.

48.     There was never an amendment to the Escrow Agreement.

49.     Defendants were never authorized by Champion to release any of the escrow funds by Champion.

50.     Defendants, notwithstanding their clear instructions they drafted and included in the Escrow Agreement that would act as the sole trigger for the release of Champion's funds, released such funds in several tranches, beginning on or about January 25, 2017, to an unauthorized third party named International Trade Group, a/k/a Express Trade Company.

51.     It appears at all times that Defendants, working for an on behalf of their client AJ, had no intention or concern with complying with the terms of the Escrow Agreement.

52. At all relevant times Defendants knew Champion was relying upon them in their capacities as a law firm and as attorneys at law, ensuring that the very documents they drafted would be followed to the letter.

53. At all times Champion relied upon the representations of Defendants that they, a prominent New York City law firm and partner therein, would be complying with the terms of the very escrow agreement they drafted.

54. All actions of defendant Katz are those of EVW.

55. EVW received the financial benefit of defendant Katz's work.

56. Upon information and belief, this continued with defendant Katz's work for AJ, in which EVW forwarded legal invoices to AJ for the work done by defendant Katz as a partner of EVW and EVW received the benefit of such payments.

57. Unbeknownst to Champion was the fact defendant Katz was not only working for AJ, but working with the company to benefit it and presumptively EVW.

58. Unbeknownst to Champion Defendants were working with AJ in an effort to split proceeds procured from transactions effectuated through the use of the ill-taken escrow funds. Discovery will demonstrate the full threshold of any such transactions and profits.

**Champion Is Significantly Damaged by Defendants' Actions**

59. Based upon the representations of Defendants, both on behalf of AJ as well as on behalf of themselves to ensure the escrow funds were indeed funded for the transaction, Champion felt secure it was protected.

60. To that end, and as they told Defendants and AJ, Champion borrowed the escrow funds at a high interest rate based upon what was to be an exponential rate of return for the sugar sales.

61.     Defendant Katz knew Champion was borrowing the money for the escrow deposit as Ms. Buring had informed Katz of the same in the course of discussions.

62.     In February 2017, Champion was informed the escrow funds had been released.

63.     Champion demanded a return of the funds.  It had not only lost the money it borrowed but the underlying escrow funds were not even delivered by Defendants to Danex International as originally agreed upon thus precluding Champion to receive any return on its investment.

64.     Champion has since been forced to secure additional loans to cover not only for the lost $200,000, as well as the income stream that should have resulted from the underlying transaction.

65.     Champion has further been forced to pass on business opportunities because the capital it needed was given away by Defendants.

66.     The damages incurred by Champion were all reasonable and foreseeable as a result of Defendants actions and omissions.

67.     Champion has been damaged by Defendants in an amount to be determined at trial.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract Against Defendants)

68.     Parallax repeats and realleges paragraphs 1-67 as if fully set forth herein.

69.     At all relevant times defendant Katz demonstrated actual, and if not actual, implied authority by EVW to act on its behalf as a partner of the firm.

70.     In such capacities Defendants drafted the Escrow Agreement that set forth the requirements of all involved parties.

71.     At all times Champion performed pursuant to the terms of the Escrow Agreement, wiring the requisite funds into the escrow account.

72.     Defendants did not comply with the terms of the Escrow Agreement.

73.     Defendants released the escrow funds in a manner inconsistent and contrary to that set forth in the very agreement they drafted.

74.     Defendants have breached the Escrow Agreement.

75.     By reason of the foregoing Champion has been damaged in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Breach of Fiduciary Duty Against Defendants)

76.     Champion repeats and realleges paragraphs 1-75 as if fully set forth herein.

77.     By virtue of Defendants acting in the capacity of an escrow agent, they held a fiduciary duty to protect the funds based upon the very agreement they drafted.

78.     Defendants, through their misconduct, knew at all times they were going to be working for the benefit of their client, AJ.

79.     Defendants knew Champion was relying upon them being an independent escrow agreement to protect the funds that Defendants knew AJ required to effectuate any type of transactions for its benefit.

80.     Defendants, by their actions, induced Champion to enter into the Escrow Agreement and Cooperation Agreement, knowing at all times that such agreements would not be governing, but rather, the instructions of their client would govern what Defendants were to do with Champion's money.

81.     Defendants at all times knew Champion was relying upon them to protect their money that was procured through a loan.

82.     Defendants released the escrowed funds in contravention to the terms of the very agreement they drafted.

83.     By reason of the foregoing Champion has been damaged in an amount to be determined at trial, together with compensatory, consequential and punitive damages.

**CLAIMS FOR RELIEF:**

**WHEREFORE**, Champion seeks judgment against Defendants as follows:

a.     On the First Claim for Relief, the entry of an order finding Defendants breached the Escrow Agreement and caused Champion to incur compensatory and foreseeable consequential damages in an amount to be set by the Court.

b.     On the Second Claim for Relief, the entry of an order finding Defendants breached their fiduciary duties to Champion, causing Champion to incur compensatory and consequential damages in an amount to be set by the Court.

c.     For each Claim For Relief, due to the egregious nature of the acts of officers of the bar of the State of New York, an entry of an order of compensatory, consequential, legal fees and punitive damages against Defendants in an amount to be determined by the Court.

e.     For any other relief deem by this Court to be just, proper and in the interests of justice.

<u>**Demand For Jury**</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Champion demands trial by jury in this action of all issues so triable.

Dated: April 10, 2020

                                        **Law Offices of Barry M. Bordetsky**

                                        By:/s/ Barry Bordetsky
                                           Barry M. Bordetsky (BB4218)
                                           570 Lexington Avenue, 24th Floor
                                           New York, New York 10022
                                           Tel. No.: (212) 688-0008
                                           Email: barry@bordetskylaw.com